IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,    )
                       )
       Plaintiff,        )
                       )
v.                        )      CRIMINAL NO. 08-00074-WS
                       )      (Civil Action No. 10-00410-WS-N)
SCOTT DOUGLAS MYERS,    )
                       )
       Defendant.      )

## REPORT AND RECOMMENDATION

This action is before the Court on Defendant/Petitioner Scott Douglas Myers'

motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc.

186).   This matter has been referred to the undersigned Magistrate Judge for entry of a

report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration of

the petitioner's § 2255 motion, the Government's response in opposition thereto (doc.

191), and  all other pertinent portions of the record,[1] it is the recommendation of the

undersigned that the § 2255 motion be **DENIED**.

## I.  BACKGROUND.

A.  Procedural History.

Defendant Scott Douglas Myers was charged with four co-defendants in a two-

count indictment (doc. 34).  In Count One, Myers was charged with conspiracy to

---

[1] The petitioner was given an opportunity to reply (docs. 189 and 193) but neither filed such a
reply nor sought an extension of time within which to do so.

commit bank fraud in violation of 18 U.S.C. § 1349. (*Id.*). In Count Two, Myers was charged with making or possessing counterfeited securities in violation of 18 U.S.C. § 513(a). (*Id.*).

Petitioner Myers pleaded guilty without a plea agreement on April 17, 2008, to both counts of the indictment. (Docs. 69, 160 at 25). Although Myers disputed the allegation about his leadership role in the scheme to defraud, he admitted the remaining facts described by the prosecutor as follows, in pertinent part:

On or about February 11th of 2008, the United States Postal Inspection Service and the United States Secret Service received information from a confidential informant that an individual in a green minivan was recruiting people . . . from outside a homeless shelter in Mobile, Alabama, to cash false payroll checks at local Wal-Mart Stores. Additional investigation resulted in the van being located and stopped that same day in Mobile County. At that time, it was being driven by Joseph Stanley who, after being Mirandized and questioned, revealed that he had been recruited by four people, the leader of which he identified as Scott Myers, to recruit homeless people to cash payroll checks at local Wal-Mart Stores. Mr. Stanley also provided information about a trailer park in Theodore, Alabama, where he believed that these four individuals, including Mr. Myers, were staying.

Law enforcement agents subsequently located the trailer park, and Mr. Myers as well as Crystal Bowers, Thomas McIntire, and Linda Amerio were found there. Mr. Myers was taken into custody based on an outstanding warrant. Ms. Bowers, Mr. McIntire, and Ms. Amerio were questioned about the scheme, and they consented to a search of the two trailers they were travelling or residing in.

Based upon the results of the searches and statements given by Ms. Bowers, Mr. McIntire, and Ms. Amerio, law enforcement agents were able to determine that these four individuals were involved in a scheme beginning in 2007 to recruit homeless people in different cities around the United States. They would use the personal information of the homeless people to print false payroll checks payable to the homeless people, and then they would transport them to local Wal-Mart Stores to cash the checks, including Wal-Mart Stores in Mobile.

The checks were generally made out in the amount of 250 or $300. The homeless people they recruited would be given approximately $25 out of that amount per check cashed with Mr. Myers, Ms. Bowers, Mr. McIntire, and Ms. Amerio retaining and splitting the rest, depending on their involvement at the time.

The checks used in the conspiracy were drawn at least in part on Chase Bank, among other banks and financial institutions, using accurate routing information and generally fictitious account information. Chase Bank is Federally insured and was Federally insured at the time of the Defendants' actions.

And as to Count Two, at the time of the searches on that date when law enforcement became aware of the scheme, directly outside of the trailer that was being occupied by Mr. Myers and Ms. Bowers on their lot was a trash can containing multiple commercial checks that were later verified to be counterfeit. The checks were written on Chase Bank accounts, which is FDIC-insured, and one of the checks found in the trash can was the one identified in Count Two of the indictment.

(Doc. 160 at 22-24 and 25).

On July 21, 2008, the Court sentenced Myers to 96 months imprisonment on both counts to run concurrently but with the intent that this sentence be consecutive to any sentence imposed in his Ohio revocation proceedings.[2] (Docs. 128, 160-1 at 40-41). This sentence represents an upward departure from the applicable guideline range of 51-63 month imposed by the Court based on a specific finding "that a guideline sentence is inappropriate and that a sentence above the Guidelines is needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment to afford adequate deterrence to criminal conduct and to protect the public from your further

_____

[2] At the time of the present offenses, Myers was serving a supervised release term for a July 2000 conviction in the Northern District of Ohio. PSI, p. 13, ¶ 50.

crimes." (Doc. 160-1 at 40).[3]  The Court also imposed a supervised release term of five

years on Count One and of three years on Count Two, to run concurrently.  (Docs. 128,

160-1 at 41).  Myers was also ordered to pay restitution in the amount of $94,846.51, as

well as a mandatory $200 special assessment.  (Docs. 128, 160-1 at 41, 43).

Myers filed a timely notice of appeal (doc. 130) raising the following issues:

> 1) the facts of his case did not justify the district court's upward variance
> from his guidelines range of 51 to 63 months of imprisonment; and (2) the
> upward variance was improperly based on factors that also were used to
> calculate his guidelines range. In addition, Myers argues that the district
> court plainly erred by ordering that his 96-month sentence run
> consecutively to any future sentence imposed by another district court for
> the conduct underlying his present offense.

(Doc. 174 at 5).  The Eleventh Circuit Court of Appeals rejected Myers's arguments and

affirmed his sentence on July 29, 2009.  (*Id*. at 16).  The Eleventh Circuit mandate was

issued on March 25, 2010.  (*Id*. at 3).

Myers filed the instant motion to vacate, set aside, or correct sentence under 28

U.S.C. § 2255, together with a supporting brief, on August  2, 2010.  (Docs. 186-187).

The Government filed a response (doc. 191) on September 20, 2010.  Myers elected not

to reply or to seek an extension of the December 13, 2010, deadline within which to

reply.  (Doc. 193).  Consequently, the motion is now ripe for consideration by the Court.

---

[3] The Court emphasized that:  "Apparently, we have been unsuccessful in protecting the public
from your further crimes by punishing you before and putting you on supervised release, only to have you
continue to perpetrate crimes against the United States. So, a sentence within the Guidelines does not do
that."

II.     Habeas Claims.

In his § 2255 motion, Myers raises the following claims:  1) his plea was not knowingly and voluntarily entered; 2) he received ineffective assistance of counsel on appeal; 3) he received ineffective assistance of counsel at sentencing; 4) he received ineffective assistance of counsel throughout the proceedings; 5) the conviction was obtained and/or based on perjured testimony and other irregularities; 6) the cumulative effect of counsel's conduct was sufficiently egregious as to amount to a denial of his rights; 7) there was a total breakdown in communication between he and his counsel; and 8) his conviction is based upon evidence obtained in violation of his Fourth and Sixth Amendment rights.  (Doc. 186).

In its response in opposition to Myers' petition, the United States has categorized the claims into the following two issues:  1) whether petitioner's plea was knowingly and voluntarily entered; and 2) whether petitioner received ineffective assistance of counsel. Inasmuch as Myers has alleged ineffective assistance of counsel both during the plea process and throughout the proceedings, the undersigned will address the allegations of ineffectiveness as it pertains to Myers' guilty plea as well as the issue of the knowing and voluntary nature of Myers' plea in this case.

III.     Statement of the Law.

Meyers' ineffective assistance claims are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), and its familiar two-fold analysis:

> To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of the test set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984). The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687-89, 104 S.Ct. at 2064-65. The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064.

Unless a petitioner satisfies the showings required on both prongs, relief is due to be denied. *Id.* As a result, once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been. *Id.* at 697, 104 S.Ct. at 2069 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). In this case we need not look beyond the prejudice prong.

To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (*quoting* Strickland, 466 U.S. at 693, 104 S.Ct. at 2067).

United States v. Butcher, 368 F.3d 1290, 1293-94 (11th Cir. 2004). *See also* Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(" The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable.").

The Eleventh Circuit has more recently confirmed:

The Strickland test applies to challenges of guilty pleas, as well as to convictions by jury. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In this context, the first prong of Strickland requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. *See id.* at 369-70. The second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process," meaning the defendant must show "a reasonable probability that, but for counsel's errors," he would have entered a different plea. *Id.* at 370 (stating the test in the context of an accepted guilty plea); *see also* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) (applying the test to a rejected plea agreement).

The district court "shall" hold an evidentiary hearing on a habeas petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.' " Aron [v. United States], 291 F.3d [708] at 714-15 [(11th Cir. 2002)] (quoting Holmes v. United States, 876 F.2d 1545, 1552 (11th Cir. 1989)). Yet the "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." *Id.* at 715. Thus, the petitioner needs to allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief. If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous," the requirement of an evidentiary hearing is triggered and the petitioner must offer proof at that hearing. *Id.* at 715 n. 6.

Scott v. United States, 325 Fed.Appx. 822, 824 (11th Cir. 2009). The Eleventh Circuit

has also held:

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n. 8 (11th Cir. 1987). However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of "the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56-57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985).

United States v. Munguia-Ramirez, 267 Fed. Appx. 894, 897 (11th Cir. 2008). *See also*,

Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984)("[C]ounsel owes a lesser

duty to a client who pleads guilty than to one who decides to go to trial, and in the former

case counsel need only provide his client with an understanding of the law in relation to

the facts, so that the accused may make an informed and conscious choice between

accepting the prosecution's offer and going to trial.")

As applied to the claims asserted in case at bar, Myers has failed to show either

that his counsel's performance was deficient or that he suffered any prejudice as a result

of his counsel's actions. In addition, the record before the court affirmatively contradicts

Myers's claims.

IV.    Discussion.

    A.    Myers' guilty plea was knowing and voluntary and did not result
             from ineffective assistance of counsel.

Myers claims that his plea to conspiracy to commit bank fraud and making or

possessing counterfeited securities (checks) was rendered involuntary because of

ineffective assistance of counsel[4]. ( Docs. 186 at 4; 187 at 2, ¶ 10). Myers predicates his

claim on his personal belief that he did not in fact violate 18 U.S.C. § 1349 because he

did not intend to defraud a financial institution "within the meaning of § 1344, Title 18,

U.S. Code" but, instead, had merely "engaged in a plan to defraud Wal-Mart of money."

---

[4] Peter Madden, with the Federal Defender's Office for this district represented Myers during his
guilty plea and at sentencing. Elsie Mae Miller, an attorney also employed with that office, represented
Myers on direct appeal.

(Doc. 187 at ¶¶ 1- 5). Although not as clear, Myers also appears to argue that he has not violated 18 U.S.C. § 513(a) because, *inter alia,* the company named on the checks did not exist; some of the financial institutions named on the checks did not exist; the ABA routing numbers, although otherwise valid, were not the routing number for the bank named on the check; some of the "fractional and MICR routing numbers did not agree"; and "[n]o financial institution would have (and none did) pay" on the subject checks. (*Id.* at ¶ 6). In sum, Myers argues that his counsel was ineffective because he rejected Myers' proposed defenses as frivolous and recommended that he plead guilty. However, Myers has not, and cannot, proffer any legal support for his opinion that his conduct in this matter, expressly admitted during the plea hearing (doc. 160 at 22-25), did not constitute a violation of 18 U.S.C. §§ 513(a) and 1349. The Eleventh Circuit, among others, has specifically rejected Myers' argument. *See* <u>United States v. Singer</u>, 152 Fed. Appx. 869, 875 (11th Cir. 2005) (affirming conviction for bank fraud where defendant argued that the evidence was insufficient to show that the federally insured banks were the intended victims rather than the merchants who cashed the fraudulent check.). *See also*, <u>United States v. Brandon</u>, 298 F.3d 307, 312 (4th Cir. 2002) ( "[T]he bank need not be the immediate victim of the fraudulent scheme . . . and the victim bank need not have suffered an actual loss; it is sufficient for the government to show 'that a financial institution [was] exposed to an actual or potential risk of loss'.")(internal citations omitted). Consequently, Myers' contention that he did not violate the federal statutes charged in the indictment is without merit.

Myers also contends that, but for counsel's erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. (*Id*. at ¶ 10). However, Myers' later contradicts himself by contending that he "desired to resolve this matter by plea agreement rather than trial." (*Id*. at ¶ 40). Myers has, therefore, proffered no factual basis for the claim that his plea was not voluntary or knowing (doc. 186 at 4) apart from the contention that his counsel was ineffective for rejecting his opinion regarding the law. To the contrary, the record conclusively establishes that Myers' plea was knowing and voluntary. The transcript of the guilty plea hearing refutes any suggestion that Myers did not understand, because of his counsel's deficient performance, the charges against him and the elements which the United States was required to prove, as herein illustrated, in pertinent part:

> THE COURT: Are each of you fully satisfied with the representation that you've received from your attorney in this case, and have you fully discussed with your attorney all of the facts surrounding the charge? Mr. Myers?
>
> MYERS: Yes, sir.

(Doc. 160 at 9). The Court also explained the charges and the elements of the offenses to Myers and his co-defendants as follows:

> THE COURT: All right. Each of you are pleading guilty to Count One of the indictment in this case. And Count One of the indictment charges a violation of Title 18, United States Code, Section 1349, which is conspiracy to commit bank fraud.
>
> The elements of that offense are that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and

unlawful plan as charged in the indictment, and in this case, the object of the conspiracy was to commit bank fraud; and that you, knowing the unlawful purpose of the plan, willfully joined in it.

Do each of you understand that those are the elements of the offense charged in Count One to which you are pleading guilty? Mr. Myers?

MYERS:        Yes, sir.

- - - - - -

THE COURT:        And do you fully understand that if there was a trial in this case, the United States would be required to present sufficient evidence to prove each of these essential elements beyond a reasonable doubt?

Do you understand that, Mr. Myers?

MYERS:        Yes, Sir.

- - - - - -

THE COURT:        All right. And also for Mr. Myers is a plea to Count Two of the indictment, which charges a violation of Title 18, United States Code, Section 513, which is a charge of making or possessing counterfeit securities.

Mr. [AUSA] do you have the elements of that offense?

AUSA:        Yes, Your Honor. First, that the Defendant did make, utter, or possess a counterfeited security of a state, or political subdivision thereof, or organization. And in this would relate to a counterfeited security of Chase Bank. And then element two would be that the Defendant did so with intent to deceive another person, organization, or government.

THE COURT:        All right. And Mr. Myers, you understand that those are the elements of the offense charged in Count Two of the indictment?

MYERS:          Yes, sir.

(Doc. 160 at 18-21). The record in this case therefore establishes that the three "core concerns" in any Rule 11 guilty plea were clearly satisfied: (1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea. United States v. Monroe, 353 F.3d 1346, 1354 (11th Cir. 2003).

In addition, the AUSA recited the facts supporting Myers's guilty plea as set forth above (doc. 160 at 24-25) and the Court inquired whether Myers had any objections to the facts as stated by the AUSA. Other than disputing the facts relating to his leadership role, Myers admitted that the facts as described were true. (*Id*. at 25). This Court then found that "the facts and acts to which you admit support a violation of the charges contained in Counts One and Two of the indictment." (*Id*.). When then asked by the Court how he wanted to plead to the charges, Myers responded, "Guilty." (*Id*.). The Court then found:

> [I]n the case of the United States versus Scott Douglas Myers, Crystal Bowers, Thomas McIntire, and Linda Amerio, that each of you are fully competent and capable of entering an informed plea, that you are aware of the nature of the charge and the consequences of your plea, and that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted, and each of you are now adjudged guilty of that offense.

(Doc. 160 at 25-26).  The record also contains Myers's express assurance that his plea was not the result of "anyone attempt[ing] in any way to force you to plead guilty or to pressure you or threaten you in any way."  (Doc. 160 at 10).

 "[A] guilty plea is not a meaningless gesture to be renounced on a lark."  United States v. Cesal, 391 F.3d 1172, 1180 (11th Cir. 2004), *vacated on other grounds*, 125 S.Ct. 2553 (2005).  Nor is it "a means of testing the weight of a potential sentence."  United States v. Gonzales-Mercado, 808 F.2d 796, 801 (11th Cir. 1987).[5]

Myers points to no evidence in this record to support any suggestion  that he did not understand the purpose of the plea proceedings or the ramifications of his guilty plea.  This Court specifically advised Myers of the possible penalties involved as well as the guidelines.   (Doc. 160 at 11, 13-15).  *See* United States v. Moriarity, 429 F.3d 1012, 1020 (11th Cir. 2005) (plea was knowing and voluntary; defendant "does not cite, and we do not find, anything in the record indicating that he meant to plead other than guilty").   Myers' affirmatively represented under oath that he understood.  *See* United States v. Medlock, 12 F.3d 185, 187 (11th Cir.), *cert. denied*, 513 U.S. 864 (1994)("There is a strong presumption that statements made during the plea colloquy are true."); United

---

[5] In United States v. Gonzales-Mercado, 808 F.2d 796, 801 (11th Cir. 1987), the timing of defendant's motion to withdraw his guilty plea was found to have been an indication of defendant's motivation to avoid a harsher sentence.  Gonzales-Mercado did not move to withdraw his guilty plea until the commencement of his sentencing hearing, which was subsequent to the sentencing of co-defendants who had no prior convictions.  The Court surmised that the only reason Gonzales-Mercado sought to withdraw his guilty plea was because his co-defendants without prior convictions had been given 18 months prison sentences, which meant that it was likely that he would receive a harsher sentence because of his prior conviction.  As applied to the case at bar, Myers received a sentence of 96 months which constituted a significant upward departure from the guideline range of  51-63 months, and similarly did not challenge his guilty plea until after his sentence was affirmed on appeal.

States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)(defendant bears a "heavy burden" to show that his statements under oath were false); Thompson v. Wainwright, 787 F.2d 1447, 1460 (11th Cir. 1986)("[T]he representations of the defendant as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding."). In this case, the record conclusively demonstrates that Meyers's plea was knowing and voluntary and did not result from ineffective assistance of counsel. The Court, therefore, did not err in accepting Myers's representations and his guilty plea.

B.       Myers' waived all non-jurisdictional challenges.

In addition, "[a] defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." United States v. Wilson, 962 F.2d 996, 997 (11th Cir. 1992). Myers is precluded from collaterally attacking his conviction because his guilty plea was clearly knowing, voluntary, intelligent, and counseled. *See* United States v. Bousley, 523 U.S. 614, 621 (1998)("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."), *quoting* Mabry v. Johnson, 467 U.S. 504, 508 (1984). *See also* United States v. Broce, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence [and] when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both

14

counseled and voluntary. If the answer is in the affirmative then the conviction and the

plea, as a general rule, foreclose the collateral attack.").   Thus, by pleading guilty,

Myers waived any ineffective assistance of counsel claims involving pre-plea issues

which might otherwise have existed.   (*Id*. at 997-98).

As specifically applied to this case,  Myers' fifth claim, that "the conviction was

obtained [and/or] based on perjured testimony and other irregularities,"   (docs. 186 at 13;

187 at 6-7, ¶¶ 41-48, 50-56), is waived by Myers' guilty plea pursuant to such cases as

Broce and Bousley, *supra*.   Likewise, Myers' eighth claim, that his "conviction is based

upon evidence obtained in violation of his 4th and 6th Amendment rights" (docs. 186 at

19; 187 at 7, ¶¶ 50-56), is also waived.  *See also* Tollett v. Henderson, 411 U.S. 258, 267

(1972) ("When a criminal defendant has solemnly admitted in open court that he is in fact

guilty of the offense with which he is charged, he may not thereafter raise independent

claims relating to the deprivation of constitutional rights that occurred prior to the entry

of the guilty plea.").   Consequently, the claims delineated by Myers as his fifth and

eighth claims do not constitute valid grounds for habeas relief and  are due to be

dismissed.

Finally, Myers has not only failed to establish that his trial counsel rendered

constitutionally deficient performance during the plea process under the stringent

Strickland standards, but has also failed to establish the requisite prejudice prong as set

forth in Hill v. Lockhart, 474 U.S. 52 (1985), wherein the Supreme Court declared:

> [T]he two-part Strickland v. Washington test applies to challenges to guilty
> pleas based on ineffective assistance of counsel. In the context of guilty
> pleas, the first half of the Strickland v. Washington test is nothing more

than a restatement of the standard of attorney competence already set forth in <u>Tollett v. Henderson</u>, *supra*, and <u>McMann v. Richardson</u>, supra. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, ***the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial***.

474 U.S. at 58-59 (emphasis added).  Even though Myers contended initially that he "would not have plead [sic] guilty but for counsel's representations" (doc. 187 at ¶ 10), he has not established that counsel's alleged "representations" were inaccurate and, more importantly,  he later contradicted this contention by conceding that "Defendant desired to resolve this matter by plea agreement rather than trial" (*Id*. at ¶ 40).  Myers  further concedes that, by the time he offered to assist the government, his co-defendants had already assisted the government "thereby nullifying anything defendant had to offer."[6] (*Id*. at ¶ 38).   *Cf*,  <u>Davis v. United States</u>, 404 Fed. Appx. 336, 338-39 (11th Cir. 2010) (Counsel's failure to take into consideration defendant's pretrial conduct, when she allegedly advised him that he would not jeopardize his eligibility for a two-level, acceptance-of-responsibility reduction by proceeding to a bench trial, "did not render counsel's performance constitutionally deficient."), *citing* <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (noting a criminal defendant is "not entitled to error-free representation").  *Cf also*, <u>Scott v. United States</u>, 325 Fed. Appx. 822, 825 (11th Cir.

---

[6] Myers' attempt to place the blame for the delay in his offer of co-operation on his trial counsel is not supported by the record which establishes that, upon arrest, Myers' co-defendants  immediately gave post-<u>Miranda</u> statements to the authorities, while Myers "refused to make any statements."  (Doc. 104 at ¶¶ 15-16).

2009) (Defendant failed to satisfy the *prejudice* prong of the <u>Strickland</u> inquiry by merely suggesting that he would have given a guilty plea greater consideration had counsel informed him that he could avoid a mandatory life sentence pursuant to a 21 U.S.C. § 851 enhancement by entering a guilty plea without a plea agreement). *citing* <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991) (Petitioner failed to establish prejudice because he offered only "after the fact testimony concerning his desire to plead."). Myers is, therefore, not entitled to habeas relief which is predicated on any contention that he did not receive effective assistance of counsel as it pertains to his guilty plea.

        C.     Myers did not receive ineffective assistance of counsel at sentencing.

Myers' ineffectiveness claim with respect to sentencing is predicated on his contention that, but for his attorney's failure to call witnesses as instructed that would have contradicted the government's evidence, he should not have received a leadership role enhancement. (Docs. 186 at 6-7 and 187 at 3-5, ¶¶ 18-28). Myers also contends that counsel was ineffective at sentencing for failing to object: 1) to the restitution amount; 2) to points being added to his criminal history category for two of his prior convictions; and 3) to whether this Court had authority to require its sentence to be served consecutively to a sentence yet to be imposed in Ohio. (Doc. 187 at 5-6, ¶¶ 29-32). Myers also contends that his attorney failed to notify him of a motion to forfeit seized money, failed to inform him about where his revocation hearing was going to be held, and prevented him from testifying at sentencing. (*Id*. at 7, ¶¶ 33-34, 49). Myers' claims regarding his sentencing lack any merit and do not support habeas relief.

With respect to his complaints regarding counsel's alleged failure to object to the restitution amount, to notify him of a motion to forfeit seized money, and/or to inform him about where his revocation hearing was going to be held, Myers has failed to demonstrate any conceivable effect of such on his sentence. As to his contention that counsel prevented him from testifying at sentencing, such is inconsequential inasmuch as the Court itself gave Myers an unrestricted opportunity to speak at the sentencing hearing and he chose to respond only as follows:

> Your Honor, I don't know what to say. I mean, I wish I had never done it. My life fell apart, and I made some bad choices. I'm sorry.

(Doc. 160-2 at 37).[7] Myers does not even speculate as to the specific testimony he claims he was prevented from presenting by his attorney or the impact it might have had on his sentence.

There is also no merit to Myers's conclusory and unsupported contentions that counsel was ineffective because he failed to call co-defendants Linda Amerio and Crystal Bowers, as well as an unidentified third witness, to testify at sentencing concerning his leadership role. According to the record, this Court heard the testimony of two other co-defendants, Thomas McIntire and Joseph Stanley, and concluded that

---

[7] Had Myers taken the stand, he could have been subject to an obstruction of justice enhancement if the Court disbelieved his testimony. *See e.g.* United States v. Padron, 938 F.2d 29, 30 (2nd Cir. 1991)("[W]here a defendant's testimony 'relates to an essential element of his offense' and 'the evidence also persuades the sentencing judge that the defendant knew, at the time of testifying, that the statements to which he testified were untrue,' the two-level upward adjustment under section 3C1.1 [ of the United States Sentencing Guidelines] 'would be appropriate'."), *quoting* United States v. Bonds, 933 F.2d 152, 155 (2nd Cir. 1991). Consequently, counsel would not have been inefective for advising defendant not to testify. Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it.").

there was sufficient evidence that Myers was the leader and thus qualified for the imposition of a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a). (Doc. 160-1 at 35). Based on that same testimony, the Court also concluded that Myers qualified for an additional two-level enhancement for relocation of the scheme under U.S.S.G. § 2B1.1(b)(9)(A). (*Id*. at 36). After overruling Myers' objection, the Court adopted the PSI Report without further objection. (*Id*.). The PSI Report also reflects that co-defendants Amerio and Bowers gave statements to the authorities immediately after they were arrested from which it can be legitimately inferred that Myers was the leader of the group. (Doc. 104 at 6 and 7). In light of the "beneficial plea agreements" they received, it is unlikely that Amerio and Bowers would have changed their statements to their detriment had they been called to testify at Myers's sentencing hearing. Consequently, Myers's counsel did not render ineffective assistance by failing to subpoena Amerio and Bowers.

Further, there is no merit to Myers' contention that his counsel rendered deficiency assistance by failing to object to the inclusion of criminal history points for two previous convictions two points added for Myers' prior convictions. (Doc. 187 at ¶¶ 30-31). The record reflects that counsel did, in fact, object as directed by Myers. (Doc. 160-1 at 33-34). Counsel explained to the Court that, *after* he had spoken with Myers and filed his written objections to the PSI Report, Myers raised his objections to the inclusion of these prior convictions. (*Id*. at 33). The Court ruled that the "objections come too late." (*Id*. at 34). Even if it could be said that counsel was responsible for the delay in raising a challenges to the inclusion of these prior convictions, it was harmless

19

error, because the Court clearly stated that it was "not going to matter anyway." (*Id.*).

The Court imposed a sentence above the guideline range and expressly stated:

> So, regardless of whether the Court is wrong or right
> with regard to your objections of the Guidelines as discussed,
> including criminal history points, it is of no moment because
> the Court finds that a guideline sentence does not provide the
> requirements of sentencing as found in Section 3553(a).
> It is the judgment of this Court that a sentence of 96
> months, an eight-year sentence, is appropriate and reasonable
> under the circumstances.

(*Id.* at 40).

In United States v. Keene, 470 F.3d 1347 (11th Cir. 2006), the Eleventh Circuit

confirmed that "it is not necessary to decide guidelines issues or remand cases for new

sentence proceedings where the guidelines error, if any, did not affect the sentence." 470

F.3d at 1349, *quoting* United States v. Williams, 431 F.3d 767, 773 (11th Cir. 2005)

(Carnes, J., concurring). The Eleventh Circuit upheld the sentence in Keene because the

sentencing court had specifically declared:

> And I will say for the record that even if the guideline calculations are
> wrong, my application of the sentencing factors under Section 3553(a)
> would still compel the conclusion that a 10-year sentence [120 months] is
> reasonable and appropriate under all the factors that I considered.

470 F.3d at 1349. Similarly, in the present case, the Court declared that Myers'

challenges to the guideline applications were irrelevant because the sentenced imposed of

96 months would have been imposed regardless and was "appropriate and reasonable

under the circumstances." (Doc. 160-1 at 40). The Eleventh Circuit affirmed the

sentence and specifically declared that "given the serious and extensive nature of Myers's

offense and his likelihood of recidivism, Myers has not met his burden of demonstrating that his sentence was substantively unreasonable."  (Doc. 174 at 13).

Myers' challenge to this Court's authority requiring that his 96 month sentence run consecutive to any sentence or sentences not yet imposed by other courts was addressed by the Eleventh Circuit on direct appeal and is, therefore procedurally barred. *See* <u>Davis v. United States</u>, 417 U.S. 333, 342 (1974)(Petitioner is precluded from asserting any § 2255 claim resolved previously on direct appeal unless the claim seeks relief on the basis of an intervening change of law.);  <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981) ("This Court is not required on s 2255 motions to reconsider claims of error raised and disposed of on direct appeal.").  *See also* <u>Hidalgo v. United States</u>, 138 Fed.Appx. 290, 291 (11th Cir. 2005) (same); <u>United States v. Hinton</u>, 2010 WL 5071050 at *6 (S.D. Ala. Nov. 2, 2010)(same).

> D.     Myers did not receive ineffective assistance of counsel on appeal.

Claims for ineffective assistance of counsel on appeal are also governed by the <u>Strickland</u> standard.  <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir.  1991) ("<u>Strickland</u> held that in evaluating whether the appellate counsel's performance was deficient, counsel's performance must be evaluated for 'reasonableness under prevailing professional norms'."), *quoting*  <u>Strickland</u>, 466 U.S. at 688.   In order to prevail on this claim, Myers must establish that "his appellate counsel's performance was deficient and that this deficient performance prejudiced his defense."  <u>Heath</u>, 941 F.2d at 1130.

Myers raises only one argument of substance - -  that his sentence was not reasonable.  As noted above, the Eleventh Circuit addressed this claim on direct appeal

and resolved it against Myers. (Doc. 174 at 10-13, 16). Consequently, this claim is procedurally barred and Myers is precluded from raising it in his § 2255 motion. *See* Davis, 417 U.S. at 342; Rowan, 663 F.2d at 1035.

The remaining claims regarding Myers's appellate representation, such as the contention that appellate counsel was not a member of the Alabama Bar (doc. 187 at ¶ 12) and misrepresented the meaning on an *Ander's* brief [8] (*Id*. at ¶ 14) or that he was unable to "analyze the case (pro se) for meritorious appellate issues" (*Id*. at ¶ 17), do not support habeas relief. Nor is there any merit to Meyers' claims either that his appellate counsel "failed to conduct a learned review of the case" (*Id*. at ¶ 15), or that he received "no meaningful appellate review of his conviction and/or sentence" (*Id*. at ¶ 16). Myers' general contentions regarding counsel's alleged deficient performance are simply insufficient to satisfy his burden under Strickland. Myers has proffered no viable appellate issue which his appellate counsel could be charged with ignoring. Consequently, he has failed to establish that he received ineffective assistance of counsel on appeal.

## V.   Evidentiary Hearing

The undersigned has carefully reviewed the record and concludes that no evidentiary hearing is required in this action. Schriro v. Landrigan, 550 U.S. 465, 474

---

[8] Evolving from the Supreme Court's decision in Anders v. California, 386 U.S. 738, 741-744 (1967)(reciting an acceptable procedure for treating frivolous appeals). *See also* Smith v. Robbins, 528 U.S. 259, 267-68 (2000)("Anders set forth a procedure for an appellate counsel to follow in seeking permission to withdraw from the representation when he concludes that an appeal would be frivolous; that procedure includes the requirement that counsel file a brief "referring to anything in the record that might arguably support the appeal'.")

(2007)("if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").   Myers has not proffered any evidence that would require an evidentiary hearing.   Chandler v. McDonough, 471 F.3d 1360, 1362-63 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 2269 (2007).  It is also clear that the pertinent facts of the case are fully developed in the record before the Court.   Schriro,  550 U.S. at 475 ("the District Court was well within its discretion to determine that, even with the benefit of an evidentiary hearing, [habeas petitioner] could not develop a factual record that would entitle him to habeas relief."). Myers' claims either lack any substance or are affirmatively contradicted by the record and are due to be denied as a matter of law.  Myers also is not entitled to an evidentiary hearing because his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); *see also* Lynn v. United States, 365 F.3d 1225, 1239 (11th Cir.)(district court not required to hold evidentiary hearing when affidavits "amount to nothing more than mere conclusory allegations."), *cert. denied*, 534 U.S. 891 (2004). "[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not require to hold an evidentiary hearing." United States v. Bejacmar, 217 Fed.Appx. 919, 921 (11th Cir. 2007), *citing* Aron v. United States, 291 F.3d 708, 715(11th Cir. 2002).

## VI.   Certificate of Appealability/*In Forma Pauperis*

Pursuant to the changes to Rule 11 of the Rules Governing Section 2255 Proceedings which became effective December 1, 2009, the undersigned now addresses

the appealability of the recommended denial of plaintiff's habeas petition. "A [COA] may issue only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)).

In the undersigned's view, the issues Myers has raised in his motion are not sufficiently substantial to justify the issuance of a certificate of appeal. Myers's entered a guilty plea and acknowledged the accuracy of all of the facts described by the prosecutor except his alleged leadership role. Myers has failed to establish that either his trial counsel's representation  or his appellate counsel's representation was in any manner deficient. Myers's claims regarding the reasonableness of his sentence was addressed on direct appeal and the Eleventh Circuit expressly held the sentence to be reasonable, even as imposed consecutively to any yet unimposed sentence by other courts. Under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in denying the instant § 2255 motion or that Myers should be allowed to proceed further. Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, the undersigned recommends that the Court

conclude that no reasonable jurist could find it debatable whether Myers's § 2255 motion should be denied; thus, he is not entitled to a certificate of appealability.

Additionally, the undersigned here addresses the related issue of whether any appeal of an order adopting this Report and Recommendation and denying habeas relief may be brought in *forma pauperis*. An appeal may not be taken in *forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed.R.App. P. 24(a)(3)(A); <u>Lee v. Clinton</u>, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that "good faith" is "an objective concept" and that "not taken in good faith" is "a synonym for frivolous"); <u>DeSantis v. United Techs, Corp</u>., 15 F.Supp.2d 1285, 1288-89 (M.D . Fla. 1998) (stating that good faith "must be judged by an objective, not a subjective, standard" and that an appellant "demonstrates good faith when he seeks appellate review of any issue that is not frivolous"). An appeal filed in *forma pauperis* is frivolous if "it appears that the Plaintiff has little to no chance of success," meaning that the "factual allegations are clearly baseless or that the legal theories are indisputably meritless." <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993). For the foregoing reasons, the undersigned recommends that the court find no possible good faith basis for appeal of the denial of the petitioner's habeas claims, and thus that no appeal of such a ruling may be brought in forma pauperis.

## CONCLUSION

For the reasons set forth above, if is hereby **RECOMMENDED** that petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 be

**DENIED**, and that no Certificate of Appealability should issue and no appeal  in *forma pauperis* be allowed.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this __7th__ day of November, 2011.


/s/Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

# RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

Objection. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days[9] after being served with a copy of the recommendation, unless a different time is established by order." The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**DONE** this  7th  day of November, 2011.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).